United States Court of Appeals
Fifth Circuit

**F I L E D**

June 19, 2003

Charles R. Fulbruge III
Clerk

REVISED JUNE 24, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10051

_____

JILL MUNCY, ET AL.,

                                        Plaintiffs,

                    v.

CITY OF DALLAS, TEXAS, ET AL.,

                                        Defendants.

_____

ROBERT JACKSON, Etc.; ET AL.,

                                        Plaintiffs,

ROBERT JACKSON, Assistant Chief;
WILLIE TAYLOR,

                              Plaintiffs - Appellants -
                              Cross - Appellees,

                    v.

CITY OF DALLAS, TERRELL BOLTON,
Chief of Police, in his individual
and official capacities; TEODORO
BENAVIDES, City Manager, in his
individual and official capacities;
CHARLES DANIELS, Assistant City
Manager, in his individual and
Official capacities,

                              Defendants - Appellees -
                              Cross - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas

_____

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:

The controversy at bar stems from an employment dispute between Plaintiffs-Appellants, Robert Jackson and Willie Taylor, and the Dallas Police Department. Jackson and Taylor were removed from command positions with the Dallas Police Department and demoted to significantly lower ranks. They initiated this action against Defendants-Appellees, the City of Dallas, Police Chief Bolton, City Manager Benavides, and Assistant City Manager Daniels, asserting, *inter alia*, 42 U.S.C. §1983 claims of substantive and procedural due process deprivation, and state law claims for breach of contract and wrongful termination. The district court entered summary judgment against Jackson and Taylor with respect to all claims on the grounds that they lacked a property interest in their employment. We agree with the district court's conclusion that Jackson and Taylor lacked a property interest in their employment, and consequently we herein affirm the district court's grant of summary judgment.

I.

*The Underlying Employment Dispute*

On October 1, 1999, Defendant-Appellee Terrell Bolton was named Chief of Police of the Dallas Police Department (DPD) by Defendant-Appellee City Manager Teodoro Benavides. Soon after his appointment, Bolton endeavored to bring about a significant reorganization of the command structure of the DPD. Among other things, Bolton decided to make personnel changes at the highest

2

level of the DPD. Towards that end, on October 30, 1999, Bolton "removed" nine department members from their command staff jobs. Plaintiffs-Appellants Robert Jackson and Willie Taylor were among those removed from their positions.

Jackson joined the police force in 1972. He steadily made his way up through the department ranks, receiving promotions to the positions of Deputy Chief of Police in 1988, then to Assistant Chief of Police in 1990. In 1991, he was promoted to the position of Executive Assistant Chief of Police, the second highest command position in the DPD. It was from this position that he was removed by Bolton in 1999. Those executives who were removed in Bolton's reorganization were demoted to the highest rank appointment they had held prior to being appointed to the executive ranks. Consequently, Jackson was demoted to the rank of Sergeant.

Taylor joined the DPD in 1971. In 1991 he was promoted to Deputy Chief of Police. In August 1999, Taylor received an award from the DPD for twenty years of perfect attendance. In October of 1999, he was removed from his executive position by Bolton. Taylor was demoted to the rank of Lieutenant.

Jackson and Taylor were manifestly dissatisfied with their demotions. Jackson retired from the DPD rather than continue his employment at the reduced rank. He eventually accepted a job as Chief of Police for the City of Killeen, Texas. Taylor remained with the DPD, but contacted City Manager Benavides requesting

both a written statement citing reasons for his demotion, and a hearing to contest his demotion. On November 16, 1999, Benavides responded by informing Taylor he had no right of appeal. Taylor retired from the DPD on March 27, 2001.

On June 21, 2001, the City of Dallas (the City) contacted Jackson and Taylor by letter informing them that they were reinstated in the DPD, at their highest previously held executive positions. They were advised to report for duty on August 15, 2001.  However, both Jackson and Taylor have refused reinstatement. They have not returned to their jobs, nor have they accepted checks tendered by the City for back pay and pension contributions.  Instead, they have pursued this litigation.

Jackson and Taylor initiated this action in the Northern district of Texas, asserting substantive and procedural due process violations as well as state law claims for breach of contract and wrongful termination. The parties filed  cross-motions for summary judgment. The district court granted Appellees' motion for summary judgment on all counts, finding that Jackson and Taylor lacked a property interest in their executive positions with the DPD, and consequently they could not prevail on their substantive or procedural due process claims, nor could they prevail on their state claims. Jackson and Taylor now appeal that finding.

4

II.

A. *Property Interest*

The primary question before this Court is whether, at the time of their demotion, Jackson and Taylor were endowed with a property interest in their continued employment at their respective executive ranks with the DPD.[1] Jackson and Taylor assert that they enjoyed a protected property interest in their executive rank positions with the DPD. We find, however, that they did not.

It is well-settled that certain public employment situations may endow an employee with a legally cognizable property interest. *Gilbert v. Homar*, 520 U.S. 924 (1997)(observing that a public employee who is dismissable only for cause has a property interest in his continued tenure); *Cleveland Bd. of Ed. v.*

---

[1] The Fourteenth Amendment to the Constitution prohibits the deprivation of life, liberty or property unless the deprived party has been afforded the benefit of those justice-safeguarding processes which are due by law. U.S. Const. amend. XIV, § 1.

However, the Constitution only requires process in circumstances in which the aggrieved party has been deprived of a protected interest. Therefore, here, if Jackson and Taylor lacked a property interest in their employment, then they cannot prevail on their substantive or procedural due process claims, as the act of removing Jackson and Taylor from their positions only implicates those Constitutional guarantees if they first enjoyed a legally cognizable property interest in their continued employment. Moreover, Jackson and Taylor agree with the district court that if their employment is determined to be at-will, then summary judgment was appropriately entered against them with respect to their state law claims. Consequently, the focus of our inquiry here is fixed on the dispositive question of whether Jackson and Taylor had a property interest in their jobs.

5

*Loudermill*, 470 U.S. 532 (1985). However, a property interest is not incidental to public employment, instead it must be created by an independent source, such as state law. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Conner v. Lavaca Hosp. Dist.* 267 F.3d 426 (5th Cir. 2001).  In general, we have  recognized that a property interest is created where the public entity has acted to confer, or alternatively, has created conditions which infer, the existence of a property interest by abrogating its right to terminate an employee without cause. This abrogation may take the form of a statute, rule, handbook, or policy which limits the condition under which the employment may be terminated, *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985) (quoting *Perry*, 408 U.S. at 602-03, 92 S.Ct. at 2700); or it may take the form of a more particularized mutual understanding with the employee. *Stapp v. Avoyelles Parish School Board,* 545 F.2d 527 (5th Cir.1977); *Perry*, 408 U.S. at 602. Ultimately, however, the question of whether a property interest exists is an individualized inquiry which is guided by the specific nature and terms of the particular employment at issue, and informed by the substantive parameters of the relevant state law.

In Texas, there exists a presumption that employment is at-will unless that relationship has been expressly altered in one of two ways. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000). The at-will relationship may be altered by contract;

6

*Conner*, 267 F.3d at 426 (citing *Loftis v. Town of Highland Park*, 893 S.W.2d 154, 155(Tex.App.--Eastland 1995, no writ); or by express rules or policies limiting the conditions under which an employee may be terminated; *Vida v. El Paso Employees' Federal Credit Union*, 885 S.W.2d 177, 182 (Tex.App. -- El Paso 1994, no writ).

Here, there is no contract or similarly mutual understanding with the City from which the putative property interest might stem, and so the force of Jackson's and Taylor's arguments here surround their allegations that the City's official personnel policies provided them with a property interest.[2] Specifically, Jackson and Taylor urge this Court to find that a property interest in their executive rank employment emanated from a myriad of sources, including several chapters of the City Charter, City Personnel Rules, and City Human Resource documents. We, however, find that none of the sources to which Jackson and Taylor direct this Court vest in them a "legitimate right to continued employment." *McDonald v. City of Corinth, Tex*., 102

---

[2]While Jackson and Taylor do advance an argument implicating a mutually explicit understanding with the City, that argument is without merit. Jackson and Taylor suggest to this Court that a property interest in their employment was created by oral representations made by City Officials. They assert that City Officials assured Jackson and others that they would not be demoted except for cause. In assessing this contention, the district court correctly interpreted *Montgomery County Hospital District v. Brown*, which held that such assurances in and of themselves do not create a property interest in the employee's continued employment. 965 S.W.2d 501 (Tex. 1998).

F.3d 152, 154 (5th Cir.1996)(citing *Perry v. Sindermann*, 408 U.S. 593, 601-02(1972)).


1.   *Section 5*

First, Jackson and Taylor argue that Chapter XII, Section 5 of the City Charter demonstrates that they were not at-will employees. Section 5 states:

> If the chief of the police department, or any assistant above the rank and grade of captain, was selected to that position from the ranks of the police department and is removed from the position on account of unfitness for the discharge of the duties of the position, and not for any cause justifying dismissal from the service, the chief or the assistant shall be restored to the rank and grade held prior to appointment to the position, or reduced to a lower appointive rank.

Jackson and Taylor interpret this provision as mandating that a chief-level officer may only be removed from his position if he is "unfit" for the duties of the position, and Jackson and Taylor would have us understand unfitness for duty as a quality akin to the property interest-creating, for-cause condition on employment termination.[3]

---

[3]Jackson and Taylor rely on *Richardson v. Felix*, 856 F.2d 505 (3rd Cir. 1988), which is inapposite. In *Richardson*, the Third Circuit found that a provision listing the procedures by which an employee could be terminated for cause plainly meant that employees could only be terminated for cause. *Id.* However, there is no analogue here, as the provision cited by Jackson and Taylor does not list procedures for terminating employees for

This interpretation, however, is not supported in the text of Section 5. Section 5 outlines the conditions in which a chief-level officer who is slated for demotion may be retained in the department: only if the employee is removed for a reason other than one that would be cause for dismissal, then will the employee be demoted as opposed to discharged altogether. Thus the provision contemplates that high level officials will be removed from time to time, and in those instances in which the removal is not for a cause that warrants dismissal, then the official will be reassigned within the department.

However, the decision to remove the executive in the first instance is not conditioned on good cause, or even on - as Jackson and Taylor would have us understand it - an "unfitness of duty". Moreover, even if it were, the phrase "unfitness for duty" describes a nebulous status which conceivably could encompass political unsuitability or any number of other reasons which fall short of the property interest-conferring, termination-for-cause standard. Indeed, Section 5 allows that the demoted employee will be retained only in those instances in which the "unfitness for duty" does not rise to the level of "cause warranting dismissal". Thus the provision itself evidences that executives may be replaced for reasons other than for-cause. Therefore, Section 5 does not serve as a limit on the City's

cause.

9

ability to remove in the first instance, but rather it serves as a limit on the City's ability to retain a former executive at his previous rank.

> 2.   *Section 10*

Jackson and Taylor next point to Chapter XVI, Section 10 of the City Charter to support their contention that Jackson and Taylor had a property interest in their continued employment.[4] Section 10 describes the terms of the probationary period for new employees. Section 10 states:

> Appointments or promotions of city officers and employees in the classified and unclassified service shall not be deemed complete until a period of six months shall have elapsed. A probationer may be discharged, suspended or reduced within said period by the city manager, or the head of the department in which said probationer is employed without right of appeal.

Jackson and Taylor argue that this provision grants a property interest by creating an implicit right of appeal upon completion of the probationary period.  However, while this argument would appear to be supported in the text of Section 10, the next section of the chapter, Section 11, outlines the affirmative parameters of the right of appeal and expressly

---

[4] Jackson and Taylor also assert that Chapter XVI, §16 of the City Charter invests them with a property right. However, this claim was not before the district court and consequently is not properly before this Court.

limits the right to non-managerial employees.  That section

provides in pertinent part:

> Any classified or unclassified officer or
> employee may be removed, laid off, or reduced
> in grade by the city manager...after the six
> month probationary period has expired.... The
> discharged or reduced officer or employee
> shall have the right to demand a public
> hearing upon the charges.... This right of
> appeal does not apply to department
> directors, assistant department directors,
> and other managerial personnel designated by
> the city counsel.

Consequently, the district court correctly concluded that

because Jackson and Taylor were employed in managerial positions,

the Section 11 exception to the Section 10 right of appeal

applied to them.

Jackson and Taylor do not challenge the district court's

conclusion that they were employed in managerial level jobs.

Instead, they offer a novel theory concerning Section 10.  They

contend that even if the right of appeal implicit in Section 10

has been withheld from employees like them in Section 11, that

exemption does not eviscerate the property interest itself.

Relying on cases which stand for the proposition that the

existence of a property interest does not depend on the creation

of procedures to remedy the deprivation of the interest, Jackson

and Taylor argue that their ability to access the right of appeal

does not inform the question of whether the existence of an

11

appeals process invests them with a property interest. *See Arnett v. Kennedy*, 416 U.S. 134, 185 (1974).  Specifically Jackson and Taylor state that "[t]he exemption language contained in Section 11 speaks to the procedure of an appeal, not the underlying property right which is set out...in Section 10." They then conclude that once their respective probationary periods were completed, their property interests vested pursuant to Section 10.

This abstract right of appeal argument, however, is steeped in contorted reasoning. Jackson and Taylor are asserting that the mere specter of a theoretical right of appeal which they are, in actuality, expressly excluded from claiming, places a sufficient limit on the conditions of their termination or demotion such as could alter the at-will nature of their employment.  This conclusion is obviously inconsistent with the standard put forth in Texas law which requires a general employment policy to be specific and explicit before finding that an at-will employment relationship has been altered.  *City of Midland,* 18 S.W.3d at 215; *Conner,* 267 F.3d at 426. Additionally, it is sophistry to suggest that the City is constrained in any meaningful way from terminating Jackson and Taylor by a provision from which they are expressly excluded. Therefore, Section 10 does not grant Jackson and Taylor a property interest in their continued employment.

3. *The Human Resources Documents*

Jackson and Taylor next direct the Court to two personnel documents authored by the City which Jackson and Taylor contend confer a general property interest upon all City employees that complete the probationary period. The first of these documents, dubbed the "Policy Document", states:

> Property Rights: Upon completion of the probationary period, an employee is said to have a "property right" to their [sic] position. This means that the City cannot remove you from your position without due process. Due process requires that an employee be given specific notice of the reason of termination or other disciplinary action affecting the employee's property right.

Jackson and Taylor point to this language and suggest that the City has created a blanket property interest. However, Jackson and Taylor overlook the relevant qualification contained in a section of the Policy Document germanely entitled "Grievance / Disciplinary Appeal Process" and which unequivocally states:

> Specifics [regarding the steps of the appeals process] are noted in the City Personnel Rules in Section 34-38, Grievance and Appeal Procedures.

Rule 34-38 of the City Personnel Rules appears in the City Personnel Rules under Article VI, which governs the "Discipline, Grievance, and Appeal Procedures" for City employees. Rule 34-38 specifically addresses the "Grievance and Appeal Procedures" and provides in relevant part:

13

> (A) Applicability. This section applies
> to every permanent city employee except:
>> (1) a department director,
> assistant department director or other
> managerial personnel designated by the city
> council in accordance with Section 11,
> Chapter XVI of the city charter.

Thus, the personnel rule which outlines the right of appeal for City employees is unequivocally consistent with Section 11, Chapter XVI of the City Charter in expressly excluding managerial level employees such as Jackson and Taylor from the general right of appeal. As the Policy Document incorporates Rule 34-38 by reference, we find that in authoring the Policy Document, the City consistently excluded managerial employees from the general right of appeal, and consequently the Policy Document cannot serve as a source for creating a property interest in managerial level positions.

Similarly, Jackson and Taylor direct the Court to another human resources document, dubbed the "Kress Document", which also outlines the City's official personnel policies regarding the probationary period, and grievance and appeal processes. The Kress Document states:

> The Dallas City Charter creates a
> property interest for employees who
> satisfactorily serve a probationary period.
> Having attained a property interest an
> employee is entitled to certain procedural
> protections before his employment may be
> terminated or seriously impacted.

However, the Kress Document, too, incorporates Rule 34-38 by

14

reference in describing the appeal procedures.[5]  Therefore we find that the Kress Document is also consistent with the bi-level approach adopted by Section 11 of the City Charter which excludes managerial employees from the right of appeal.

In sum, we find nothing in the sources presented us which vested Jackson and Taylor with a legitimate right to continued employment. Indeed we instead find that in each of the documents before this Court, the City has laudably balanced its obligation to inform its non-executive rank employees of their due process rights, while carefully and quite appropriately retaining the City's right to remove, without impediment, high-ranking officers. It is both proper and desirable that the City should preserve its ability to act as a political body and reorder its municipal leadership when the public welfare so requires, and the City certainly does not forfeit that right by extending a property interest to its non-executive employees.

Therefore, as the City did not act to confer a property interest to their executive-rank employees, we conclude that Jackson and Taylor were, at the time of their demotion, employees

---

[5]The same analysis applies to Jackson's and Taylor's claim of property interest pursuant to the City Personnel Rules. While Jackson and Taylor direct the Court to Rule 34-11 which outlines a probationary period for new employees and newly promoted employees, and to Rule 34-12 which describes a grievance and appeal process for employees who have served beyond their probationary term, Rule 34-38 nevertheless expressly exempts, "a department director, assistant department director, or other managerial personnel" for the right of appeal described in Rules 34-11 and 34-12.

15

at-will, and the City was free to discharge them without cause.[6]

B.   *Motion to Bar*

Appellees, the City, Bolton, Benavides, and Daniels assert a single-issue cross-appeal. Appellees contest the district court's ruling on Jackson's and Taylor's motion to bar certain attorneys in the City Attorney office from working on the instant case.  In ruling on this motion the district court held that attorneys Moss, Plaster, McClain, and Morales (hereafter the CAO Attorneys), who were previously permitted to withdraw as counsel of record on the basis that they might be called as witnesses in the case, were likewise barred from participation in the case.

A motion to bar under these circumstances is akin to a motion to disqualify, and as such, this Court reviews the district court's determination to bar under an "overall abuse of discretion" standard, in which we review the findings of fact for clear error, and the application of the rules of ethical conduct *de novo*. *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1311

---

[6]The district court also determined that neither the Policy Document nor the Kress Document created a property interest in Jackson's and Taylor's employment because they did not present evidence that they received or relied on the document. However, Jackson's and Taylor's reliance on the documents is not relevant to the analysis as to whether the City volitionally created a property interest in its employment through the crafting of its personnel policies.

(5th Cir.1995); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261(5th Cir. 2001).

However, the motion at bar deviates from the usual motion to disqualify in one significant respect. Here, the attorneys who were barred from participation in the case had previously requested that the district court allow them to withdraw as counsel of record. The CAO Attorneys asked the court to be permitted to withdraw because, "some of the attorneys currently representing the Defendants may be called as witnesses in the case." The Court granted the motion to withdraw, but the Plaintiffs later moved to bar the very same attorneys who had withdrawn. The motion to bar alleged that the withdrawn attorneys were continuing to participate in the case. It is clear from the record that the district court construed the CAO Attorneys' motion to withdraw as a motion to withdraw from both presentation and participation in the case, and consequently when presented with Jackson's and Taylor's motion to bar the CAO Attorneys from participation in the case, the district court stated:

> Plaintiffs have moved to bar based upon the Court's earlier order [permitting the withdraw of the CAO Attorneys]. Plaintiffs have not brought a motion to disqualify.... Because some of the attorneys who specifically withdrew from representation have continued to provide legal advice to Defendants, the Plaintiffs' motion is granted in part.

Thus, the district court understood its ruling on the motion to

bar to be an enforcement of its early ruling withdrawing the CAO Attorneys. Our analysis here is distinguished from that which would be applicable in the context of a motion to disqualify. Were this an instance in which the district court disqualified a party's counsel of choice, ethical rules of conduct would govern the court's discretion to limit a party's right to the counsel of his choice. Here, however, the party in question moved the court to withdraw his counsel, and therefore no finding of disqualification was required for the attorney to be removed from the case. We note further that although it might have, the motion to withdraw fails to specify that the CAO Attorneys wished to be withdrawn from representation, but not from participation, in the case. Instead, the motion indicates only that the CAO Attorneys would be withdrawn as counsel of record. Moreover, it is not a clearly erroneous conclusion to surmise that attorneys who have been voluntarily withdrawn as counsel of record from a case are similarly withdrawn altogether from the case.

While both Appellees and Appellants point to rules which they deem to be controlling as to which attorneys could be barred by the district court and to what degree, both parties misapprehend the scope of a district court's discretion under the particular circumstances at bar. Appellees argue that the district court erred in barring the CAO Attorneys from participation in the case because Rule 3.08(a) of the Texas Disciplinary Rules of Professional Conduct provides that

attorneys who may be called to testify are barred from representation before the Court, but not from participation in the case. Appellees conclude that the district court confused the standard put forth in Rule 3.08 -- which bars only representation, and only by the attorney who might be called to testify -- with the concept of attorney disqualification, which potentially calls for the disqualified attorney to abstain from both representation and participation in a given case.

However, in asserting that the district court misapplied Rule 3.08(a) of the Texas Disciplinary Rules of Professional Conduct, Appellees are in error. Indeed, the district court did not apply Rule 3.08(a) at all, but instead expressly stated it found that the rule did not apply because there was no motion for disqualification pending. More importantly, Rule 3.08(a) governs the conduct of Texas attorneys, not the conditions under which a district court may bar participation by an attorney. Therefore the district court was not bound by Rule 3.08(a)in determining the degree to which attorneys who were withdrawn as counsel of record from the case could be involved in the case thereafter.

Apparently proceeding under the notion that the best defense is a good offense, Jackson and Taylor suggest that the district court did not go far enough, i.e., that the district court should have banned the entire City Attorney's Office as their motion requested. Pointing to Rule 83.15 of the Local Rules of the U.S. District Court for the Northern District of Texas,

19

Jackson and Taylor argue that the entire City Attorney Office was disqualified from both participation and representation in the case. That rule provides in pertinent part that:

> An attorney must not accept employment in a contemplated or pending case if the attorney knows...that the attorney or another attorney in the firm may be called as a witness on behalf of the client....If, after accepting employment in a case, an attorney learns... that the attorney or another attorney in the firm may be called as a witness on behalf of the client, the attorney and the firm must withdraw from the case.

L.R.83.15(a),(c) of N.D.Tex. (emphasis added). However, Rule 83.15 is inapplicable here. Under the heading, "Acceptance of Employment" the rule details the circumstances in which an attorney should decline to "accept employment...in a case." The rule stipulates that when an attorney knows that he or someone in his firm may be called to testify in a given action, that attorney must decline to accept employment in the case. The policy supporting this rule is evident, and implicates conflict of interest concerns for the attorney acting as both an employee of a party to the suit, and a witness -- concerns which are simply not relevant when applied to the City Attorney Office or other government agency.

Therefore, the district court did not err in ruling as it did on the motion to bar. The district court did not rely on either rule cited by the parties as controlling, and indeed

20

neither rule cited by the parties is controlling. Instead the district court determined, in its discretion, to bar from participation those attorneys who had already been withdrawn as attorneys of record in the case. This determination does not constitute an abuse of discretion and consequently we will not disturb it.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.