United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 16, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

―――――――――――――――

No. 04-10506

―――――――――――――――

JILL MUNCY, et al.,

Plaintiffs,

versus

CITY OF DALLAS, TEXAS, et al.,

Defendants.

―――――――――――――――――――――

ROBERT JACKSON, et al.,

Plaintiffs-Appellants,

versus

CITY OF DALLAS, TEXAS, et al.,

Defendants-Appellees,

―――――――――――――――――――――――――――――――――――――

Appeal from the United States District Court
for the Northern District of Texas
Civil Case No. 3:99-CV-2960-P;
Civil Case No. 3:00-CV-588-H

―――――――――――――――――――――――――――――――――――――

Before GARWOOD, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

Robert Jackson ("Jackson") and Willie Taylor ("Taylor")

appeal from a post-judgment order by the district court entered

―――――――――――――――

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

March 26, 2004, instructing that certain checks held in its registry be returned to the City of Dallas ("City") instead of disbursed to Jackson and Taylor. Jackson and Taylor argue that the checks belonged to them because the City had voluntarily and unconditionally paid Jackson and Taylor back pay from the date they were removed from their chief-level positions (October 30, 1999) to the date they were instructed to report to the City's Police Department for duty (August 15, 2001). Thus, they maintain that the checks were a gift to them from the City and that they never relinquished their claim of ownership to the checks by depositing them in the registry. They also argue that this court has jurisdiction to review a post-judgment order distributing funds held in the district court's registry.

## I.

### *Factual Background*

When Terrell Bolton was named Chief of Police of Dallas in October, 1999, he immediately demoted several career officers and replaced them. Among the demoted officers were Jackson, a twenty-seven year police veteran, and Taylor, an officer with twenty-eight years of service. Jackson retired from the Dallas Police Department ("DPD") rather than continue employment at the reduced rank, and Taylor stayed on until March 27, 2001. Jackson and Taylor sued the City in March 2000 asserting substantive and

procedural due process violations as well as state law claims for breach of contract and wrongful termination.[1]

On June 21, 2001, the City notified Jackson and Taylor by letter that it was reinstating them to their former chief-level positions. On August 7 and August 13, 2001, the City sent letters to Jackson and Taylor, respectively, requesting them to accept their reinstatement by reporting for duty on August 15, 2001. These letters also mention the back pay checks at issue here:

> If you do not report for duty on August 15, 2001, you will be deemed to have rejected your reinstatement, as well as all accompanying salary and benefits from August 15, forward, and to have affirmed your decision to remain on your retirement status from the City of Dallas. A check for your back pay will be sent to you shortly.

Neither man reported for duty to the Dallas Police Department on August 15, 2001.

As the City was preparing to send checks to the plaintiffs for back pay, Jackson's and Taylor's attorneys were considering how to manage this transaction. They were ostensibly concerned that acceptance of the checks at that time might imply that they had released the City from liability. Jackson's and Taylor's attorneys initially requested the City to pay the sums directly into the district court registry, but when the City responded that Texas law required wages to be sent to employees, Jackson's and Taylor's attorneys responded that the City officials

---

[1] More factual details about this litigation can be found in this court's opinion <u>Muncy v. City of Dallas, Tex.</u>, 335 F.3d 394 (5th Cir. 2003).

3

should "do whatever it is they think is necessary for the disposition of the funds."

On September 7, 2001 (three weeks after the date the plaintiffs were requested to appear for work), the City sent checks for back pay directly to Jackson and Taylor.[2] On October 10, 2001, the district court granted Jackson's and Taylor's Unopposed Motion Regarding Back Pay, ordering that the checks tendered to Jackson and Taylor by the City be held in the district court registry. The Order reads, in relevant part:

> ORDERED that Plaintiffs tender the checks representing the back wages presented to them by Defendants to the District Clerk, so that such checks are held securely in the vault used to hold non-cash collateral . . . ; and it is, further,
>
> ORDERED that such checks be returned to Plaintiffs at the culmination of this litigation; and it is, further,
>
> ORDERED that the City of Dallas, a Defendant herein, honor such checks when they are returned to Plaintiffs, or replace them, upon conclusion of this litigation.

Jackson's and Taylor's motion for this Order stated their intent regarding this registry deposit:

> In the event that Plaintiffs succeed on their claims herein, these funds can certainly be used to partially satisfy Defendants' judgment obligations. In the unlikely event that Plaintiffs are not successful herein, Plaintiffs will still be entitled to the funds Defendants have voluntarily paid to them because of the claimed "reinstatements." After all, Defendants will hardly be

---

[2]    According to the City, the checks for Jackson (totaling $145,389.38) and for Taylor (totaling $51,297.50) covered salary from October 31, 1999 (when the men were fired by Chief Bolton), through August 14, 2001 (the day before they were requested to report for duty).

4

able to claim, if they are ultimately successful, that they "didn't really reinstate Plaintiffs" and "didn't really make them whole." Thus, in either scenario, the funds should at some point belong to Plaintiffs.

On November 19, 2001, the district court granted summary judgment for the City on all federal and state law claims, finding that Jackson and Taylor lacked a property interest in their executive positions with the DPD and thus the City was not liable for wrongful discharge. See Muncy v. City of Dallas, Nos. 3:99-CV-2960-P, 3:00-CV-588-H, 2001 WL 1480770, at *1 (N.D. Tex. Nov. 19, 2001). Jackson and Taylor appealed, and in June 2003, this court affirmed the judgment of the district court. See Muncy v. City of Dallas, Tex., 335 F.3d 394 (5th Cir. 2003). The City did not cross-appeal the Order requiring it to return the funds at the conclusion of the litigation. Both opinions focused on whether the positions constituted "property" within the meaning of the Fourteenth Amendment, and neither opinion analyzed the legal or factual issues pertaining to the back pay checks.[3]

Following this court's affirmance of summary judgment, the City, on August 7, 2003, filed a Motion to Determine Status of Checks. This appears to be the first time that the City claimed that the checks ought to be returned. The district court entered

---

[3] Regarding the checks, the district court Memorandum Opinion and Order stated in its facts section: "Both Taylor and Jackson have refused to accept their reinstatements, rejecting the checks offered by the City, and refusing to return to employment with the City." Muncy, 2001 WL 1480770, at *1. This court said basically the same thing: "They have not returned to their jobs, nor have they accepted checks tendered by the City for back pay and pension contributions." Muncy, 335 F.3d at 397.

5

the March 26, 2004, Order, instructing that the funds be returned to the City instead of disbursed to Jackson and Taylor. Reaching this conclusion, the district court principally relied on the following observation:

> [T]he record is clear that the Plaintiffs separately chose not to accept the checks tendered to them as well. Concerned that acceptance of the checks would somehow lessen any damages they might recover against the City, the Plaintiffs chose not to accept the checks and, instead, chose to pursue this litigation. . . . Now that they have ultimately been unsuccessful in their litigation, Plaintiffs cannot reverse course and claim entitlement to the same checks which they had previously rejected.

Jackson and Taylor appeal this post-judgment order.

## II.

### A. Appellate Jurisdiction

The City argues that the post-judgment order is not a reviewable "final order" because it was administrative only and merely implemented the district court's summary judgment order. Stated differently, the post-judgment order does not resolve any new factual or legal issues that were left unaddressed by the district court's summary judgment order that determined that the City was not liable to Jackson and Taylor. According to the City, the district court's March 26, 2004, disbursement order is a "reiteration" of the November 19, 2001, summary judgment order.

The City correctly states the law concerning appeals of post-judgment orders but incorrectly applies it to the circumstances of this case. A mere ministerial order (such as an order

6

executing a judgment) is not a final appealable order. This conclusion flows from the general principle that an appeal from a post-judgment order should not function as a second appeal of the judgment. Very often, an order to disburse funds from the court registry will be "ministerial" in this sense that the order simply executes the decision explicitly reached in the final judgment.

Where, on the other hand, a post-judgment order resolves important questions that arise after a final judgment, appellate review is available to test the trial court's disposition. In re Farmers' Loan & Trust Co., 129 U.S. 206, 213, 9 S.Ct. 265, 266 (1889) (explaining that most trial court decisions resolving important, but ancillary, matters that arise after the entry of judgment are final decisions permitting appellate review); 15B Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3916 (2d ed. 1992) ("[O]nce the original trial proceedings have been completed, final judgment appeal should be available upon conclusion of most post-judgment proceedings.").

Here, the March 26, 2004, disbursement order addressed a question left unresolved by the final judgment issued more than three years earlier. The district court's November 2001 final judgment involved the merits of the underlying federal and state law claims but did not determine the ownership of the deposited back pay checks. In context, the statement from the November 2001 final judgment that Jackson and Taylor "take nothing of their claims against defendants" referred to the federal and state law

7

claims asserted in the complaint and did not resolve the important question of which party owned the deposited checks. Thus, the post-judgment order transferring the checks to the City concluded a discrete proceeding and is appealable.

B. Entitlement to the Checks

Pursuant to Rule 67 of the Federal Rules of Civil Procedure, a party may deposit a sum of money with the court whether or not that party claims an interest in the fund or thing deposited. FED. R. CIV. P. 67. The purpose of Rule 67 is "to relieve the depositor of responsibility for a fund in dispute." 12 Wright, Miller & Cooper, supra, § 2991. Once funds are deposited, the court should determine ownership and make disbursements. Gulf States Utils. Co. v. Alabama Power Co., 824 F.2d 1465, 1474 (5th Cir. 1987). A post-judgment order disbursing funds held in the registry of the district court is reviewed under the abuse of discretion standard.

Jackson and Taylor argue that the district court incorrectly concluded that their deposit of the checks into the registry constituted a rejection of them. We agree with the plaintiffs that their conduct with respect to the checks cannot properly be construed as a rejection. Rather than rejecting the funds, Jackson and Taylor took pains to have them safely kept in the district court's registry until resolution of the underlying dispute. Jackson and Taylor accepted the checks by depositing them

in the registry with the request that they be returned at the conclusion of litigation.

In their unopposed motion depositing the checks in the registry, Johnson and Taylor stated that they regarded the checks as a voluntary and unconditional transfer to them. They also expressed their understanding that acceptance of the checks was a separate issue from acceptance of the reinstatement of employment from August 15, 2001, forward.[4] They further declared their expectation to receive the checks back from the district court at the conclusion of litigation, stating that "in either scenario [success or failure of the underlying causes of action], the funds should at some point belong to Plaintiffs." The district court's order, quoted above, adopts plaintiffs' position explicitly. Yet, the City never appealed this Order.

The City fails in arguing that this court's prior opinion establishes the "law of the case" foreclosing recovery for Jackson

---

[4] Jackson and Taylor have sent mixed signals on this point at subsequent stages of litigation. In later proceedings, Jackson and Taylor indicated that they considered the checks and the City's reinstatement of them to be tied together and that acceptance of one was conditioned on acceptance of the other. In fact, in one pleading before the district court, Jackson and Taylor made the statement:

> [T]he City of Dallas attempted to unilaterally "reinstate" Jackson and Taylor to their former positions during the pendency of this litigation and in connection therewith, paid them monies representing "back wages." Plaintiffs did not accept payment of these "back wages . . . ."

It is significant, however, that this was not the understanding of matters expressed in Jackson and Taylor's original motion depositing the checks. Plaintiffs' motion and the district court order both contemplated that the checks would be returned to Jackson and Taylor at the termination of the litigation, regardless of the decision on the merits of the wrongful discharge claims.

9

and Taylor.  Although the opinions of both the district court and this court stated that Jackson and Taylor had "rejected" or "not accepted" the checks, those factual observations were not pertinent to the issue resolved in those proceedings — whether Jackson and Taylor held a property right in their jobs that would entitle them to due process.  See White v. Murtha, 377 F.2d 428, 431 (5th Cir. 1967) (stating that the law-of-the-case doctrine applies to questions previously litigated and decided);  18B Wright, Miller & Cooper, supra, § 4478 (describing how the discretionary law-of-the-case doctrine does not reach a matter stated in dicta that was not presented for decision and was not decided).  In fact, by failing to cross-appeal this issue in its first trip to this court, the City (inadvertently) allowed the district court's Order concerning the registry to become a final judgment.

### III.

Having ordered at the time of deposit that Jackson and Taylor would be returned the checks at the conclusion of litigation, the district court abused its discretion by disbursing the funds to the City.  For the foregoing reasons, we **REVERSE** the March 26, 2004, Order and instruct the district court to disburse the funds to Jackson and Taylor.