CORRECTED

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-11177

DORA SAUCEDO-FALLS

Plaintiff-Appellant

V.

DAVID KUNKLE; RANDY HAMPTON; CITY OF DALLAS

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
No. 3:05-CV-730

Before WIENER, GARZA, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Dora Saucedo-Falls (the "Plaintiff") was employed as an assistant chief of the Dallas Police Department (the "DPD"). Following her exposure, by an independent panel, of being "reluctant to investigate" a drug scandal in one of the divisions of the DPD over which she served as the highest ranking supervisor other than the chief of police, she was demoted and returned

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to her prior civil service rank of lieutenant. She claims that this demotion (1) violated her procedural and substantive due process rights under, and the Equal Protection Clause guarantees of, the Fourteenth Amendment, (2) was a violation of Title VII, and (3) constituted unlawful retaliation. The district court granted the motion for summary judgment filed by the Defendants-Appellees David Kunkle, Randy Hampton, and the City of Dallas, Texas (collectively, the "Defendants"). This timely appeal followed. We AFFIRM the district court's grant of Kunkle's summary judgment motion, dismissing all of the Plaintiff's claims.

## I. FACTS & PROCEEDINGS

Viewing the evidence in the light most favorable to the Plaintiff, the operative facts are as follows. In 1977, the Plaintiff joined the DPD. After attaining the civil service rank of lieutenant, she was appointed to the position of deputy chief in 1996 by a former DPD chief of police, Bennie Click. Then, on October 30, 1999, the next chief of police, Terrell Bolton, appointed the Plaintiff to the position of assistant chief, which made her the highest ranking supervisor, other than Chief Bolton, for several DPD divisions, including Narcotics. The positions of deputy chief and assistant chief are executive level appointments (unclassified) under the Dallas City Charter and do not require competitive examination.[1]

Sometime around summer or fall of 2001, Chief Bolton became aware of fraudulent and corrupt practices in the Narcotics Division. It appears from the

---

[1] The Plaintiff's contention that she is not a "managerial level" employee or an "assistant director" of a department is addressed below. She admitted in her deposition, however, that, at least for purposes of the DPD, her position as assistant chief was an executive level appointment. Additionally, the affidavit of David Kunkle, the chief of police who demoted the Plaintiff, states that the position of assistant chief is an executive level appointment, and this statement is not contradicted by other evidence in the record.

Plaintiff's description of these events that innocent persons in Dallas were falsely arrested and ultimately prosecuted for drug crimes that they had not committed, all with the knowledge and cooperation of at least some members of the Narcotics Division. The facts contained in the Plaintiff's affidavit establish that a scandal of serious dimensions occurred within the Narcotics Division of the DPD while she was the highest ranking supervisor other than Chief Bolton.

The former City Manager of Dallas, Ted Benavides, fired Chief Bolton in August 2003. We addressed his firing in Bolton v. City of Dallas, Texas.[2] Randy Hampton,[3] one of the defendants in this case, was then appointed acting chief

---

[2] 472 F.3d 261 (5th Cir. 2006).

[3] The Plaintiff's claims against Chief Hampton — for denying her the use of a take-home car, attempting to force her to accept a demotion, and attempting to block her attendance at an FBI training program — are abandoned on appeal because the Plaintiff has presented no argument on them to this court within the meaning of Federal Rule of Appellate Procedure 28(a)(9)(A). See United States v. Martinez, 263 F.3d 436, 438 (5th Cir. 2001). The only reference in the Plaintiff's brief to specific acts undertaken by Chief Hampton appears in the section discussing her retaliation claim, in which she alleges that Chief Hampton repeatedly referred to her as "woman" and berated her, but did not treat others present at the meeting of peers and subordinate personnel in the same unprofessional manner. But, as addressed below, she did not raise the retaliation claim in her complaint; as the district court noted and the Plaintiff does not contest, it was first raised in her response to the Defendants' motion for summary judgment. Accordingly, the retaliation claim is waived. See Cutrera v. Bd. of Sup'rs of LSU, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

As the only claim in which the Plaintiff has alleged that Chief Hampton himself treated her in an actionable manner is waived, the Plaintiff's other claims against him are waived as well. See FED. R. APP. 28(a)(9)(A) ("[The argument . . . must contain] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."). Treating the Plaintiff in the manner alleged may have been relevant to her equal protection or due process claims, but it is not cited as a "reason" for the "contention" that she is entitled to relief under the Fourteenth Amendment (or Title VII, which, although not pleaded in the complaint, is now before us because of an oddity discussed below). For example, in the page and a half of her brief devoted to the "Title VII" claim, she says: "Specifically, Appellant's Affidavit and other attachments to her Response to Defendants' Motion for Summary Judgment (USCA5 287-359) set forth numerous, specific facts and incidents that

of police by Benavides. In June 2004, David Kunkle, another defendant here, was appointed chief of police.

In October 2004, a report on this sordid period in the DPD's history called the Independent Panel Report implicated the Plaintiff, criticizing her for "being reluctant to investigate officers involved in what has been termed the 'Fake Drug Scandal.'" Other members of the DPD were implicated as well; the report concluded that "a lack of supervision at every level contributed to the fake drug scandal." Even prior to the release of that report, Chief Bolton had "re-assigned physically and/or by job description every officer in the Narcotics Division that had a supervisory role or any involvement in the fake drug scandal."

In the month following the report's release, Chief Kunkle summoned both Deputy Chief John Martinez, the deputy chief with day-to-day responsibility over the Narcotics Division, and the Plaintiff, the assistant chief with ultimate responsibility over that and other divisions, to a meeting in his office on November 22, 2004. At that meeting, Deputy Chief Martinez requested retirement before Chief Kunkle could remove him from his supervisory position. As the Plaintiff did not then (or at any other time) request retirement, Chief Kunkle immediately removed the Plaintiff from her position as assistant chief and reduced her to lieutenant, the highest civil service rank that she previously

support her claims and enable her to meet all of her burdens in order to avoid summary judgment." Chief Hampton's name does not appear in this section of the Plaintiff's brief. As for the Plaintiff's equal protection claim, she says: "Appellant demonstrated in her Response (USCA5 250-252), Brief (USCA5 253-86), and Affidavit (USCA5 287-325) that Appellees engaged in a long series of actions that deprived Appellant of her rights to equal protection of the law." Here again, Chief Hampton's name does not appear in this section of the Plaintiff's brief.

held.[4]   He also issued a press release highlighting the Plaintiff's demotion and Deputy Chief Martinez's retirement.

The Plaintiff filed suit for damages and declaratory relief in district court under 42 U.S.C. § 1983, alleging that her demotion from assistant chief to lieutenant violated her procedural and substantive due process rights, and her the Equal Protection Clause guarantee, under the Fourteenth Amendment. Subsequently, the Plaintiff's Equal Protection Clause claim morphed into a Title VII claim by virtue of her response to the Defendants' motion for summary judgment. In granting summary judgment against the Plaintiff on all claims, the district court concluded that the analyses of Title VII claims and claims under the Equal Protection Clause are identical. As the Defendants do not quarrel with this conclusion, we now have before us two parallel causes of action, even though only one was pleaded: The Plaintiff on appeal contends that the district court erred in granting summary judgment on (1) her "Title VII" discrimination and retaliation claims and (2) on her Fourteenth Amendment equal protection and procedural and substantive due process claims.

## II.  ANALYSIS

### A.    Standard of Review

We review a district court's grant of summary judgment de novo, using the same standards as does the district court.[5] "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."[6] The movant

---

[4] It appears that the relevant retirement rules would not have permitted Chief Bolton to deny retirement to either Deputy Chief Martinez or the Plaintiff.

[5] Condrey v. SunTrust Bank of Ga., 429 F.3d 556, 562 (5th Cir. 2005).

[6] Id.

has the initial burden "to demonstrate that no genuine issue of material fact exist[s]."[7]  After the movant satisfies that initial burden by establishing the "absence of evidence to support an essential element of the non-movant's case, the burden shifts to the party opponent to establish that there is a genuine issue of material fact."[8]  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[9]  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."[10]  At the summary judgment stage, facts are construed in the light most favorable to the non-moving party.[11]

    B.    Merits

      1.    Due Process Claims[12]

To establish a violation of the Fourteenth Amendment's guarantee of procedural due process, a plaintiff must prove that (1) he was deprived of a life, liberty, or property interest (2) without the process that was due.[13]  To establish a violation of the Fourteenth Amendment's guarantee of substantive due process, a plaintiff must prove that (1) he was deprived of a life, liberty, or

---

[7] Id.

[8] Id.

[9] Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000).

[10] Id.

[11] Connors v. Graves, 538 F.3d 373, 376 (5th Cir. 2008).

[12] For reasons not apparent to us, discussion of these claims appears in the Plaintiff's "Title VII" section of her brief and is not included in the discussion of her § 1983 claim.  We will nevertheless treat these claims as adequately briefed.

[13] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 & n.3, 542 (1985).

property interest (2) in an arbitrary and capricious manner.[14]  As here the existence of a protected interest in either the Plaintiff's position as an assistant chief or in her good name or in a name-clearing hearing is necessary for either claim to succeed, we address this common element first.

A protected property interest in governmental employment must be created by an independent source, such as state law; it is not automatically an incident of all public employment.[15]  For Texas home-rule municipalities like Dallas, state law directs us to the municipality's charter, ordinances, contracts, and policies to determine whether the public employment at issue is at-will (the default status under Texas law) or not at-will (which typically creates a protected property interest).[16]  In Muncy v. City of Dallas, Texas, we dealt with claims by DPD executive level appointees that they have a protected property interest in their executive level appointments.[17]  There, we considered claims by an executive assistant chief of police and a deputy chief of police of the DPD that each possessed a state-created property interest in his appointment.  After the accession of a new chief of police, the Muncy plaintiffs, like the Plaintiff here, were removed from their executive level appointments and returned to the highest civil service rank that they had held prior to those appointments.[18]  Unlike Bolton v. City of Dallas, another case in which we dealt with the property interest of an executive level member of the DPD, but one who had been fired,

---

[14] Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993).

[15] Muncy v. City of Dallas, Tex., 335 F.3d 394, 398 (5th Cir. 2003).

[16] See Henderson v. Sotelo, 761 F.2d 1093, 1096-97 (5th Cir. 1985).

[17] 335 F.3d at 397-98.

[18] Id. at 397.

neither the Muncy plaintiffs nor the Plaintiff was fired.[19]   We concluded in Muncy that the "City did not act to confer a property interest to their executive-rank employees . . . and the City was free to discharge them [from their appointed positions] without cause."[20]   The Muncy plaintiffs did not have a property interest in their executive level appointments.

Even though the Plaintiff acknowledges Muncy in her brief, she contends that she had a property interest in her position as assistant chief.  We addressed in Muncy the most likely sources of a property interest in an executive level appointment — Section 5 of Chapter XII and Sections 10 and 11 of Chapter XVI of the Dallas City Charter — and  concluded that they do not confer such an interest in an executive level appointment with the DPD.   The Plaintiff nevertheless urges two putative sources of her claimed property interest: (1) Section 11 of Chapter XVI of the Dallas City Charter, which she insists we misinterpreted in Muncy because the Plaintiffs in that case waived argument on

---

[19] 472 F.3d 261 (5th Cir. 2006).

[20] Muncy, 335 F.3d at 402.

a crucial distinction,[21] and (2) the DPD General Orders.[22] We address these in turn.

The authority to create executive level positions in the DPD is vested in the Dallas City Council, on recommendation by the city manager.[23] The city manager, under Section 2 of Chapter VI of the Dallas City Charter, also has the power to demote any employee of the city. But, it is not true, as the Plaintiff

---

[21] The Muncy plaintiffs waived their claim that Section 16(a) of Chapter XVI of the City Charter creates a property interest in city employment. See Muncy, 335 F.3d at 400 n.1. This argument would have proved too much in any event — the right to be free from discrimination that is conferred in Section 16(a) cannot alter the default rule in Texas that employment is at-will unless expressly altered. See id. Otherwise, almost no employment would be at-will in Texas, given that the vast majority of employers are bound by some form of antidiscrimination statute. See, e.g., TEX. LAB. CODE § 21.001 et seq. (Vernon 2007).

[22] The Defendants urge that the City of Dallas Personnel Rules foreclose a property right in this case; the Plaintiff contends that they are inapplicable. We do not perceive a property right in any of the sources, so we need not determine whether, were the text in another source to support a property right, language in the Personnel Rules forces the opposite conclusion.

[23] CHARTER OF THE CITY OF DALLAS, Ch. XII, § 1 ("There is hereby created a police department of the City of Dallas at the head of which shall be the chief of police. The police department shall be composed of the chief, whose office is hereby created and established, and other unclassified positions or assistants . . . and classified employees as the council may provide by ordinance upon recommendation of the city manager."). In the full text of the section, a comma does appear before the "and classified employees" language, perhaps suggesting that the final phrase about the creation of positions by the city council operates in apposition only to classified positions. The full structure of the section, with a comma before the "and other unclassified positions" phrase, which follows the phrase "the chief, whose office is hereby created and established," convinces us that other than the position of chief — which the section clearly indicates is created by the City Charter — all positions within the DPD are created by city council ordinance upon the recommendation of the city manager. Section 37-1 of the Dallas City Code confirms this interpretation by specifying that the composition of the DPD will be "the chief of police and such number of officers and policemen as the city council may from time to time authorize by ordinance." Whether the position of assistant chief is created by the City Council or the City Charter is irrelevant because the Plaintiff's attempts to distinguish between charter-created positions and council-created positions are feckless when considered in light of the operative provisions relevant to demotion of assistant department directors and assistant chiefs of police in the City Charter.

contends, that only the city manager can discharge or demote a member of the DPD: Section 2 of Chapter VI does not vest that power exclusively;[24] for example, Section 11(a) of Chapter XVI specifically permits the head of a department, such as the chief of police, to demote an employee of his department. And, for managerial employees[25] like the Plaintiff, such a demotion is not subject to the protections of Section 11(a).[26] Accordingly, Chapter XVI did

---

[24] Id. Ch. VI, § 2(3) (The city manager has the power "[e]xcept as otherwise provided by the Charter of the City of Dallas, to appoint and remove all heads of departments and all subordinate officers and employees of the city." (emphasis added)). It appears that the phrasing of this section during the relevant period may have differed slightly from its current phrasing. The differences are immaterial to this analysis.

[25] The Plaintiff acknowledged in her deposition that her position was unclassified. Therefore, she must have been a "director[] of [a] department[], [an] assistant director[] of [a] department[], [or] other managerial personnel as designated by rules of the [civil service] board." Id. Ch. XVI, § 3(1)(a). The other categories of unclassified employees in Section 3(1)(a) of Chapter XVI are clearly inapplicable. The Plaintiff is correct that Section 9 of Chapter XVI does not exempt assistant chiefs of police from the civil service; but, it does not exempt any position, only entire departments. The absence of an exception for her position in that section is therefore unilluminating.

[26] Id. § 11(a) ("This right of appeal does not apply to department directors, assistant department directors, and other managerial personnel designated by the city council."). There is a minor difference in word choice between Sections 3(1)(a) (some category of which the Plaintiff must fall into if her deposition testimony about holding an unclassified position is true) and 11(a) of Chapter XVI. The former refers to "managerial personnel as designated by the rules of the board," but the latter refers to "managerial personnel designated by the city council." The Plaintiff makes no argument that she falls somewhere between the two classes, although she does contest her characterization as an assistant departmental director (in apparent contradiction of her deposition testimony, in which she did not dispute that unambiguous characterization of her position in at least one question). If she is not, as she claims, an assistant departmental director, she was clearly employed in a managerial position of some kind. See Muncy, 335 F. 3d at 400 ("The district court correctly concluded that . . . [a DPD executive assistant chief of police] and [a DPD deputy chief of police] were employed in managerial positions . . . ."). It appears that a right of appeal subsists in Section 11(a)-(b) of Chapter XVI as well, at least in the version of the City Charter submitted by the parties in this case, but that in no way detracts from Muncy's conclusion that the executive level appointments of the DPD are managerial positions. Having established that the Plaintiff is a managerial employee, she is foreclosed any right of appeal by Muncy. See id. ("Section 11[] outlines the affirmative parameters of the right of appeal and expressly limits the right to non-

not create a property interest in the Plaintiff's employment. In fact, we reached the same determination in Muncy.

The Plaintiff alternatively asserts that the DPD General Ordinances confer a property interest in her position as assistant chief, noting that the chief of police is vested with the power to promulgate rules, such as the DPD General Ordinances, subject to the supervision of the city manager.[27] The Plaintiff advances that various provisions of the General Ordinances, which provide a mechanism for disciplining DPD officers and which do not expressly exempt an assistant police chief, create a property right in her former position. She ignores, however, the plain language in Section 101.00(F) of the General Ordinances, which states: "The Chief of Police . . . will . . . [a]ppoint without examination, to serve at the pleasure of the Chief of Police, executive level positions as specified in the City Charter." (emphasis added). Absent a provision of the General Ordinances that is contrary to this express language, employment as a DPD assistant chief is at-will because it is at the pleasure of the chief of police.[28] And, at-will employment does not vest a property interest in the employee.[29] All other

---

managerial employees."). If, as the Plaintiff argues, Muncy was an incorrect interpretation of the Dallas City Charter (for example, if not all managerial employees are divested of this right), then Dallas, the Texas courts, or this court en banc — but not this panel — must correct it. See United States v. Rodriguez-Jaimes, 481 F.3d 283, 288 (5th Cir. 2007). It likely makes little difference, as the Plaintiff is best classified, under the list in Section 3(1)(a) of Chapter XVI, as an assistant departmental director. We need not, however, reach that question in light of Muncy.

[27] CHARTER OF THE CITY OF DALLAS, Ch. VI, § 2(1).

[28] See Youngblood v. City of Galveston, Tex., 920 F. Supp. 103, 106 (S.D. Tex. 1996) (citing Batterton v. Tex. Gen. Land Office, 783 F. 2d 1220, 1222 (5th Cir. 1986)).

[29] See Muncy, 335 F.3d at 398.

provisions of the General Orders and the DPD Code of Conduct cited by the Plaintiff, and cases interpreting them, are irrelevant or inapposite.

The parties also argue about whether the contract that the Plaintiff signed, which acknowledged that she served as an assistant chief at the pleasure of the chief of police, can trump any property right that she might otherwise possess, and about whether the contract is one of adhesion. These matters are irrelevant. Given our conclusion that the Plaintiff did not, in fact, possess a property right in her employment as assistant chief, the provisions of her contract would be relevant only if they separately created a property right, which they do not.[30]

As we have demonstrated, the Plaintiff did not possess a property interest in her position as assistant chief, and she has waived any argument that she possessed a liberty interest in her good name or in a name-clearing hearing.[31] It follows that, without interests protected by the Fourteenth Amendment, whatever actions were taken by the DPD — and however they may have injured the Plaintiff or contravened DPD policy — the complained-of demotion by the DPD does not entitle her to relief under the procedural or substantive due process guarantees of the Fourteenth Amendment.

2. "Title VII" Claim

The Plaintiff alleged in her complaint that she was treated in violation of the Fourteenth Amendment in several ways, including denial of equal

---

[30] The Plaintiff, after trying to wiggle out of the contract's language that makes her an at-will employee, comments that the existence of the contract itself is evidence that she was not employed at-will. She cites no cases for this contention, and we find it incredible in light of the language of the contract, which specifically states that she serves at the pleasure of the chief of police.

[31] See Procter & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 n.1 (5th Cir. 2004).

12

protection.[32] The district court expressed the belief that, by classifying her equal protection claim as a Title VII claim based on her response to the Defendants' motion for summary judgment (and the Defendants do not argue otherwise), (1) the Plaintiff properly raised a Title VII claim, and (2) the two analyses are identical.[33] Even though the Defendants have forfeited a waiver argument,[34] the district court's conflation of the two causes of action is ultimately unimportant. We have said elsewhere, "Section 1983 and [T]itle VII are parallel causes of action. Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983[] and Title VII."[35] Of course, a cause of action advanced under § 1983 for violation of the Equal Protection Clause requires, inter alia, government action,[36] but Title VII does not.[37] Still, Title VII confers no less protection from stereotypical sex-based disparate treatment than does the Equal Protection Clause. Accordingly, as the Plaintiff's "Title VII" claim fails, we percieve no need to undertake an equal protection analysis.

To survive summary judgment on a claim for a violation of Title VII, a plaintiff must either produce direct evidence of intentional discrimination or

---

[32] The plaintiff is a woman.

[33] See Saucedo-Falls v. Kunkle, No. 3:05-CV-0730-N, at p. 1 (N.D. Tex. Oct. 9, 2007).

[34] United States v. Bonilla-Mungia, 422 F.3d 316, 319 & n.1 (5th Cir. 2005).

[35] Lauderdale v. Tex. Dep't of Criminal Justice, Inst'al Div., 512 F.3d 157, 166 (5th Cir. 2007) (internal citations and quotation marks omitted).

[36] See generally Ann K. Wooster, Equal Protection and Due Process Clause Challenges Based on Sex Discrimination—Supreme Court Cases, 178 A.L.R. FED. 25 (2002).

[37] See generally Russell Specter & Paul J. Spiegelman, Employment Discrimination Action Under Federal Civil Rights Acts, 21 AM. JUR. Trials 1 (2008).

satisfy the three steps of McDonnell Douglas Corp. v. Green,[38] which together make out a circumstantial case for intentional discrimination. As the Plaintiff has proffered no facts that could directly prove that her demotion was motivated by a discriminatory intent on the part of the Defendants, she must do so with circumstantial evidence by satisfying the McDonnell Douglas burden-shifting regimen. First, an employee must make out a prima facie case of discrimination by showing that: "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated."[39] If the employee establishes a prima facie case of discrimination, the burden of production shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for the adverse employment action.[40] If the employer meets that burden of production, the prima facie case dissolves and the employee must demonstrate "(1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct and another 'motivating factor' is the Plaintiff's protected characteristic."[41]

Even if we assume without granting that the Plaintiff established a prima facie case of discrimination, she has not proved that Chief Kunkle's stated reason for the sole potentially adverse employment action taken against her and preserved on appeal, viz., demotion, was a pretext or that her sex was a

[38] 411 U.S. 792, 802-04 (1973).

[39] Rutherford v. Harris County, Tex., 197 F.3d 173, 184 (5th Cir. 1999).

[40] Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007).

[41] Id.

motivating factor. Chief Kunkle claims that he demoted the Plaintiff because he lost confidence in her ability to lead the Narcotics Division and because he wanted to restore public confidence after a scandal in that division.[42] The Plaintiff offers neither fact nor argument that this reason is a pretext or a partial explanation for her demotion. We are not surprised: As non-pretextual reasons go, being linked by an independent report to a police department's scandalous participation in a scheme to convict innocent persons of crimes — even if the linkage is only for lack of proper supervision — is a legitimate, nondiscriminatory reason for demoting a high ranking police officer with cognizance over the division in which the scandal occured.

### 3. Retaliation

This claim is frivolous. The Plaintiff did not plead a claim of retaliation in her complaint, raising it for the first time in her response to the Defendants' motion for summary judgment. The district court properly concluded that the Plaintiff waived any retaliation claim she might have had because it was outside of the pleadings.[43] In more than four pages of briefing on the retaliation issue, the Plaintiff does not once mention, much less address, the basis for the district court's grant of summary judgment on this issue. She has therefore waived any argument on appeal about the basis given by the district court for its decision.[44]

---

[42] The Plaintiff would have us discount or disregard the testimony of Chief Kunkle and Chief Hampton favorable to their position. Beyond apparently confusing the burden of production, which McDonnell Douglas places on the employer after the employee makes a prima facie case of discrimination, with the burden of proof, the breadth of the position taken in the Plaintiff's brief suffers from a far more serious flaw. Federal Rule of Evidence 601, along with almost every state, expressly abolished the common law rule that interested parties are incompetent to testify because of their interest in the case.

[43] Cutrera v. Bd. of Sup'rs of LSU, 429 F.3d 108, 113 (5th Cir. 2005).

[44] See Procter & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 n.1 (5th Cir. 2004).

## III. CONCLUSION

The judgment of the district court granting the Defendants summary judgment on all claims is
AFFIRMED.