# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50485

RONALD R. HEGGEMEIER,

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2016

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

CALDWELL COUNTY, TEXAS; CALDWELL COUNTY COMMISSIONERS
COURT; ALFRED MUNOZ, Individually and in his official capacity as
Commissioner; ERNESTO "NETO" MADRIGAL, Individually and in his
official capacity as Commissioner; JOE ROLAND, Individually and in his
official capacity as Commissioner,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before CLEMENT and OWEN, Circuit Judges, and JORDAN, District
Judge.*

PER CURIAM:

Ronald Heggemeier, a white male, is a former employee of Caldwell
County, Texas. In general terms, he contends that a Hispanic voting bloc on
the Caldwell County Commissioners Court eliminated his position due to his
race, age, and age-related protected activities, violating his due-process rights

---

* District Judge of the Southern District of Mississippi, sitting by designation.

No. 15-50485

along the way. Heggemeier therefore sued Caldwell County, the Commissioners Court, and Commissioners Alfred Munoz, Ernesto "Neto" Madrigal, and Joe Roland ("Appellees"), asserting federal claims for: (1) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"); and (3) wrongful termination under 42 U.S.C. § 1983. He also asserted a state-law claim under the Texas Whistleblower Act, Texas Government Code § 554.002.

The district court granted Appellees' motion to dismiss the § 1983 claim and their subsequent motion for summary judgment on the remaining federal claims. It then declined to exercise supplemental jurisdiction over Heggemeier's state-law whistleblower claim. Heggemeier timely appealed. Finding no error, we AFFIRM.

I.

The County hired Heggemeier as an assistant district attorney in March 2010. While serving in this capacity, Heggemeier complained that the County's health-insurance policy violated the ADEA because it provided dependent health-benefit coverage for dependent children of County employees. According to Heggemeier, older workers were less likely to have children, so the older workers received "fewer County dollars per capita." Heggemeier reported this alleged discrimination to the Commissioners Court—a body consisting of four commissioners and the County Judge—on August 29, 2011.

About one month later, on October 1, 2011, the County promoted Heggemeier to County Administrator, a position newly created by the Commissioners Court to assist in the implementation and oversight of policy directives for the County. As County Administrator, Heggemeier directly

2

managed eight County departments, exercised authority for business and service-delivery aspects of county government, and assisted the County Judge in preparing each fiscal-year budget. In this capacity, Heggemeier reported an alleged impropriety that forms the basis for his state-law whistleblower claim.

In May 2013, the Commissioners Court discharged Heggemeier and one other employee. First, on May 20, 2013, the Commissioners Court voted to terminate Rhoda Chavira's employment. Chavira, who is Hispanic, had worked for the County for over twenty years and served as the head of the Indigent Health Services Department. During the deliberations over Chavira's employment, a non-Hispanic member of the Commissioners Court proposed giving her severance benefits through the end of the year, but the Commissioners Court settled on forty-one days of severance pay.

Eight days later, the Commissioners Court convened a regular meeting, during which Commissioner Roland moved to abolish Heggemeier's County Administrator position. He claimed the position was duplicative and unnecessary for a county of Caldwell County's size. Commissioners Madrigal and Munoz voted for the motion, while the two non-Hispanic members, Commissioner Fred Buckholz and County Judge Tom Bonn, unsuccessfully opposed it.

Unlike the Chavira decision, no one recommended extending Heggemeier's pay or benefits, so his position ended May 31, 2013. As a result, Heggemeier received just three-days' notice and severance in contrast to Chavira's forty-one days. Aggrieved by the loss of his employment, Heggemeier filed suit in the United States District Court for the Western District of Texas and now appeals the dismissal of his claims.

No. 15-50485

## II.

This court reviews a grant of summary judgment de novo, applying the same legal standard as the district court. *Zastrow v. Hous. Auto Imports Greenway Ltd.*, 789 F.3d 553, 558 (5th Cir. 2015). "Summary judgment is appropriate only if, interpreting all facts and drawing all reasonable inferences in favor of the non-moving party, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 559 (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As for Rule 12(b)(6), de novo review again applies. *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.

A.    Title VII Race-Discrimination Claim

Heggemeier contends that the Hispanic members of the Commissioners Court violated Title VII by terminating his employment because he is white. Such a claim can be established with either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Where, as here, a plaintiff relies on circumstantial evidence, the claim is analyzed under

4

the familiar *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).[1]

Under this framework, a Title VII plaintiff must first establish a prima facie case of discrimination. *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). After this showing has been made, "a presumption of discrimination arises, and the employer must 'articulate a legitimate, non-discriminatory reason' for the adverse employment action." *Id.* (quoting *McCoy*, 492 F.3d at 557). If the employer meets this burden of production, the plaintiff must then "show the articulated reason is pretextual." *Id.*

At the outset, we must clarify which prima facie test applies. As this court has recognized, the prima facie case is "necessarily a flexible standard that must be adapted to the factual circumstances of the case." *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012). As such, there are various formulations of the test, most of which differ at the fourth element.

While Heggemeier generally observed these variations in his district court and appellate briefs, he argued his case under the test requiring proof that:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

According to Heggemeier, this test reflects the "proper expression of the fourth element in this case." Thus, according to him, he "simply must show he was treated less favorably than another worker similarly situated under

---

[1] The magistrate judge analyzed Heggemeier's claims under both direct- and circumstantial-evidence standards, but the former has not been pursued on appeal.

5

nearly identical circumstances."    He then offers Chavira as a similarly situated comparator.

It is debatable whether this prima facie test should apply.[2] Nevertheless, the magistrate judge applied the test Heggemeier argued, and Heggemeier never objected to that portion of the Report and Recommendation.   To the contrary, he argued:  "The Magistrate correctly observes that the only disputed issue in the *prima facie* analysis is whether Plaintiff and Chavira were similarly situated in their employment with Caldwell County."   Heggemeier likewise failed to specifically appeal the district court's adoption of that standard.  Under these circumstances, review is limited to whether the district court erred in its analysis of the test Heggemeier argued.  *See FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) (holding that party wishing to preserve argument for appeal "must press and not merely intimate the argument during the proceedings" below, allowing it to be raised "to such a degree that the district court has an opportunity to rule on it").

Turning then to the district court's analysis, there is no dispute that Heggemeier satisfied the first three elements of the prima facie case. Consequently, the only disputed issue at the prima facie stage is whether Heggemeier and Chavira were similarly situated in their employment with the County.  The district court correctly concluded that they were not.

To satisfy the fourth element of the prima facie case as argued, Heggemeier was required to demonstrate that "he was treated less favorably because of his membership in that protected class than were other similarly

---

[2] The parties have at times described this as a reduction-in-force case, but neither side urged the district court to apply one of the more particularized prima facie tests that have been used in that context.   *See, e.g.*, *Pryor v. MD Anderson Cancer Ctr.*, 495 F. App'x 544, 546 (5th Cir. 2012); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990).

situated employees who were not members of the protected class, under nearly identical circumstances." *Lee*, 574 F.3d at 259. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 260 (footnotes omitted). On the other hand, "[e]mployees with different supervisors, who work for different divisions of a company or . . . who have different work responsibilities . . . are not similarly situated." *Id.* at 259–60. Significantly, if a difference between the plaintiff and the proposed comparator "*accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *Id.* at 260 (internal quotation marks omitted); *see also Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 262 (5th Cir. 2011).

Here, Heggemeier has offered little evidence that Appellees treated Chavira more favorably under "nearly identical" circumstances. With respect to his termination claim, Heggemeier and Chavira were treated the same—both lost their jobs during a reduction in force. *See Washington v. Louisiana,* 628 F. App'x 914, 918 (5th Cir. 2015) (affirming summary judgment where employer treated plaintiff and similarly situated employees the same); *see also Johnson v. JP Morgan Chase Bank*, 469 F. App'x 345, 348 (5th Cir. 2012) (same). And as to the notice and severance they received, the district court correctly held that the two were not similarly situated. Among other things the district court addressed, Chavira had been employed by the County for twenty years before her termination, whereas Heggemeier had been a County employee for only three years. Because Heggemeier has failed to show he

was treated less favorably than a similarly situated comparator, he has not established a prima facie case of racial discrimination. His Title VII claim was properly dismissed.[3]

B.    ADEA Retaliation Claim

In addition to his discrimination claim, Heggemeier asserts that the County retaliated against him in violation of the ADEA. Specifically, he contends that his opposition to the County's health-benefit policy as disparately impacting older employees was "a motivating factor in the decision to terminate his employment."[4]

The ADEA makes it unlawful for an employer to discriminate, or retaliate, against an employee "because such individual . . . has opposed any practice made unlawful by [the Act]." 29 U.S.C. § 623(d). Like Title VII discrimination claims, retaliation claims under the ADEA also utilize a burden-shifting analysis at the summary-judgment stage, starting with the prima facie case. *See Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).

To state a prima facie retaliation claim under the ADEA, a plaintiff must show: "(1) that he engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001).

It is undisputed that Heggemeier suffered an adverse employment action, but whether he can satisfy the first and third elements of the prima facie case remains in dispute. With regard to the first element, a plaintiff has engaged in protected activity if he has "opposed any practice" forbidden

---

[3] The district court held in the alterative that Heggemeier failed to show the County's legitimate, non-discriminatory reason for terminating his employment was pretextual, but we decline to consider this issue given the lack of a prima facie case.

[4] The ADEA requires "but-for causation." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

by the ADEA.  29 U.S.C. § 623(d).  Critically, the plaintiff need not establish that the practice opposed was "actually unlawful, but only that he had a 'reasonabl[e] belief that the employer was engaged in unlawful employment practices.'"  *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981)).  Here, the district court found that Heggemeier's age-based-discrimination complaint was a "stretch," but assumed without deciding that it was sufficient because he otherwise failed to prove causation.  We take the same approach and reach the same conclusion.

To begin, Heggemeier's causation argument is substantially undermined by the fact that the Commissioners Court—the body to which he voiced his complaint—hired him as the County Administrator *after* he complained about the alleged age-based discrimination.  Appellees Roland and Madrigal were both on the Commissioners Court when Heggemeier complained and when he was promoted; Appellee Munoz became a commissioner later.  *See Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (holding that plaintiff's retaliation case suffered from "critical flaws" where two of four decision-makers recommended plaintiff's promotion after she engaged in protected activity); *see also Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 784 (M.D. La. 2004) ("Under the same actor inference, if the same actor takes a positive employment action towards an employee after that employee engages in protected activity, any inference of retaliation dissipates.").[5]

Heggemeier's argument is further undermined by the amount of time that passed between his complaint to the Commissioners Court on August 29,

---

[5] Heggemeier's contention that the inference should not apply because the balance of power on the Commissioners Court shifted after he was hired as County Administrator is too speculative.

No. 15-50485

2011, and the vote to terminate his employment on May 31, 2013—a period of twenty-one months.  We have previously acknowledged that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis omitted) (quoting *Armstrong v. City of Dall.*, 997 F.2d 62, 67 n.18 (5th Cir. 1993)).  But the Supreme Court has emphasized that the proximity must be "very close," and has held that a period of twenty months between protected activity and adverse employment action "suggests, by itself, no causality at all." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (collecting cases fulfilling this requirement based on three- and four-month delays).  Accordingly, we conclude that the period of twenty-one months between Heggemeier's complaint and his termination is simply too substantial a gap to support an inference of causation.

Heggemeier attempts to overcome these deficiencies with Judge Bonn's deposition testimony that all of Heggemeier's actions, including the insurance complaint, were "cumulative" factors influencing the other commissioners' votes to terminate his employment.  The district court correctly noted that these comments are unsubstantiated, conclusory, and speculative. *See Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (holding that "deposition testimony setting forth ultimate or conclusory facts and conclusions of law [is] insufficient to defeat a motion for summary judgment").  Absent any other evidence of causation, Judge Bonn's statement simply does not suffice to carry Heggemeier's burden on this element of the

10

prima facie case. We therefore conclude that the district court did not err in granting summary judgment as to Heggemeier's ADEA retaliation claim.[6]

C. § 1983 Wrongful-Termination Claim

Heggemeier seeks damages under § 1983, contending that Appellees violated his due-process rights when they terminated his employment as County Administrator. The district court dismissed the claim finding that Heggemeier failed to allege facts supporting a property interest in continued employment. We agree.

A property interest "is not incidental to public employment and must be located in an independent source, such as state law." *Bolton v. City of Dall.*, 472 F.3d 261, 263–64 (5th Cir. 2006). As a general matter, "a property interest is created where the public entity has acted to confer, or alternatively, has created conditions which [imply], the existence of a property interest by abrogating its right to terminate an employee without cause." *Muncy v. City of Dall.*, 335 F.3d 394, 398 (5th Cir. 2003). This inquiry is "guided by the specific nature and terms of the particular employment at issue, and [is] informed by the substantive parameters of the relevant state law." *Id.*

"Texas law imposes a strong presumption in favor of at-will employment." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 862 (5th Cir. 1999). And that presumption remains unless the employment "relationship has been expressly altered in one of two ways." *Muncy*, 335 F.3d at 398. First, it may be altered by contract, *id.*, but no such contract exists in this case. Second, it may be altered by "*express* rules or policies

---

[6] Even assuming a prima facie case, the County offered a legitimate, non-retaliatory reason for the decision—cost savings. Absent some other evidence of causation, Judge Bonn's testimony that all of Heggemeier's conflicts with the County had a cumulative effect would not be sufficient to show "but-for" causation. *See Gross*, 557 U.S. at 177.

limiting the conditions under which an employee may be terminated." *Id.* (emphasis added).

Heggemeier attempts to follow this second approach in two ways. First, he relies on a Texas Attorney General opinion holding that "once the salaries of county officers and employees are set, the salaries may not be reduced, outside of the regular budget adoption and amendment process." Tex. Att'y Gen. Op. No. JC-0131, at 3 (1999). According to Heggemeier, this creates a property interest that the Commissioners Court violated when it reduced his salary to zero before the end of the budget year.

But to create a property interest, the rule or policy must be "express." *Muncy*, 335 F.3d at 398. "[A] limitation on at-will employment 'cannot simply be inferred.'" *Cty. of Dall. v. Wiland*, 216 S.W.3d 344, 354 (Tex. 2007) (quoting *Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex. 2006)). Here, the Attorney General opinion upon which Heggemeier relies addresses the authority to close governmental offices for "bad weather, repairs, and the like" and whether employees should be paid during such closures. Tex. Att'y Gen. Op. No. JC-0131, at 3 (1999). It says nothing of the authority to terminate and never purports to expressly alter the at-will status of employment. This argument has no merit.[7]

Heggemeier next argues that elected officials enjoy a "'sphere of influence' within which another officer may not interfere." *See Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 335 (Tex. 1961) (observing that officials enjoy "the sphere that is delegated to [them] by law and within which the Commissioners Court may not interfere or usurp"). Here, Caldwell County Personnel Policy § 3.03 gave Judge Bonn the authority to hire the County Administrator. So, according to Heggemeier, "[a]lthough the Commissioners

---

[7] Heggemeier cites other Attorney General opinions throughout his brief, but they likewise address dissimilar circumstances and fail to expressly create a limitation on at-will employment.

No. 15-50485

Court had initial authority to determine what resources it would allocate for the [County Administrator] department during the budget cycle," it did not have authority to reduce or eliminate the salary of employees who work under another elected official "outside of the regular budget adoption and amendment process."

To begin, "Texas law 'general[ly] reject[s] the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine.'" *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991) (alterations in original) (quoting *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198 (5th Cir. 1987)). And we have previously held that absent any express reciprocal agreement regarding discharge, county personnel policies or employee handbooks "constitute no more than general guidelines and do not create contractual rights in employees." *Garcia v. Reeves Cty.*, 32 F.3d 200, 203–04 (5th Cir. 1994).

Regardless, Heggemeier gives § 3.03 more weight than it can bear. That provision merely provides that "[t]he County Judge will select and appoint the County Administrator/Manager even though the County Administrator/Manager will report both to the Commissioners Court and the County Judge." While this language may give the County Judge initial authority to hire, it is silent with respect to the authority to fire. Moreover, it expressly states that the County Administrator reports equally to the Commissioners Court. Again, any limitation on at-will employment in Texas must be express and may not be inferred. *Muncy*, 335 F.3d at 398; *Wiland*, 216 S.W.3d at 354. So the district court correctly found this language "insufficient to endow [Heggemeier] with a property interest in his employment."

13

No. 15-50485

Heggemeier's argument suffers one final defect. The Supreme Court has emphasized that the "hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except for cause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (internal quotation marks omitted). Here, Heggemeier acknowledges that at least Judge Bonn possessed the authority to terminate his employment without cause. Specifically, he stated in his brief that appointment by the County Judge constitutes "a circumstance that takes his employment out of the at-will category for all but the County Judge." As such, he claims merely a limited property right vis-à-vis one class of decision-makers—the Commissioners Court. This limited right does not rise to the level of an entitlement because Heggemeier's employment remained at will with respect to Judge Bonn.[8] He therefore fails to plead a constitutionally protected property interest.

Absent any evidence or authority to the contrary, Heggemeier cannot overcome the strong presumption of at-will employment under Texas law. *See Zenor*, 176 F.3d at 862. And assuming an at-will relationship, his employment was, by definition, terminable "at any time by either party with or without cause." *See McDonald v. City of Corinth*, 102 F.3d 152, 156 (5th Cir. 1996). Accordingly, we agree with the district court's finding that Heggemeier's complaint did not properly state a cause of action under § 1983.

D.    Supplemental Jurisdiction over Whistleblower Claim

After dismissing all federal claims, the district court declined to exercise supplemental jurisdiction over Heggemeier's state-law whistleblower claim. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise

---

[8] Though he equivocated on this point during argument, Heggemeier conceded that if Judge Bonn in fact had the authority to terminate his employment or otherwise abolish the County Administrator's department, Heggemeier could not have held a property interest in his position.

supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Accordingly, we review a district court's refusal to exercise supplemental jurisdiction under § 1367 for abuse of discretion. *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 599 (5th Cir. 2009).

Whether a district court abuses its discretion after § 1367(c)(3) has been satisfied depends on "common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158–59 (5th Cir. 2011). And based on these factors, we have elucidated the general rule that "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire*, 554 F.3d at 602. While this rule is "neither mandatory nor absolute," *id.*, we find that the district court acted within its discretion to dismiss the pendant state-law claims under § 1367(c)(3).

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.