# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-10095

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2016

Lyle W. Cayce
Clerk

IBIM HARRY,

> Plaintiff - Appellant

v.

DALLAS HOUSING AUTHORITY,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-482

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiff Ibim Harry sued his former employer, Dallas Housing Authority, for national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act. He alleged that he was mistreated by his supervisor and co-workers because of his Nigerian national origin and that he was fired because he complained about it. The district court granted summary

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10095

judgment against Harry on all of his claims, and he appeals. We AFFIRM the grant of summary judgment.

## I.

Ibim Harry ("Harry") is a black Nigerian man who began work as an Administrator in August 2009 for Dallas Housing Authority ("DHA"), a public housing agency in Texas tasked with providing underprivileged families safe, affordable housing. Harry supervised a "cylinder," which is the term DHA uses for a "team," guiding and evaluating the performance of his staff and ensuring compliance with applicable laws regulating public housing agencies.

Harry's allegations of discrimination and retaliation center almost entirely on his turbulent relationship with his direct supervisor, Sherry Melvin ("Melvin"). Harry claims that Melvin frequently berated and made rude comments to him under the guise of monthly counseling sessions. He gives the following examples:

> At these sessions, she called me arrogant, animated, aggressive and intimidating. She criticized my manner of speaking and facial expressions by commenting that I appeared animated when I spoke. When I asked her what she meant by "animated," she said "your eyes pop out," "your nose flares" and "your manner of speaking is very offensive to me." She told me on numerous occasions that I should "communicate with people more in writing because it is less offensive."

Once, Harry pointed out that he had been raised with these traits, and Melvin responded: "You have been in the United States for several years now, why can't you adapt?"

Harry also alleges that his subordinates "were very hostile to the fact of having a black African supervisor and regularly mimicked [his] accent, manner of speaking, and even refused to take instructions from [him] as their supervisor because [he] was Nigerian." He describes one incident where a co-worker assaulted him and called him vulgar names; the offender was

immediately fired.

Harry complained about Melvin's remarks to DHA human resources, Melvin's supervisor, and eventually Melvin herself. He complained about Melvin's conduct to Melvin herself after an incident where "she harassed [him] further by holding [him] against [his] will in her office from 12:30 PM to Midnight accusing [him] of all kinds of things." Harry "was humiliated and complained directly to [Melvin] that her statements and treatment of [him] constituted harassment, made the work environment hostile and amounted to national origin discrimination." DHA fired Harry approximately two months after that incident.

DHA provides evidence of several examples of Harry's substandard work performance and negative attitude. Throughout Harry's employment, DHA received numerous complaints from employees that Harry supervised. More than one of Harry's subordinates complained that Harry made demeaning comments to them and was argumentative. One Nigerian woman asked DHA for a transfer out of Harry's cylinder because his behavior made her uncomfortable.

DHA also points to numerous problems with Harry's performance as an Administrator. One of Harry's subordinates committed "an unacceptably high level of serious errors" in her completion of a file-audit task, so Harry was given specific directives for correcting the problem and ensuring that it was not repeated. Harry failed to comply. During the incident, Harry's behavior toward Melvin was "borderline insubordinate."

DHA issued Harry three "employee discipline reports" throughout his tenure at DHA. On August 14, 2012, approximately two months before Harry's termination, DHA prepared an "individual development plan" ("IDP") for him identifying specific areas where he needed improvement and establishing directives toward those goals. Over the following two months, Harry failed to

comply with all of the directives of the IDP. DHA fired Harry on October 5, 2012.

Harry initiated this action in Texas state court, but DHA removed to federal court, invoking federal-question jurisdiction. Thereafter, Harry amended his complaint to the current version, alleging two causes of action: national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. After nearly a year of discovery, DHA moved for summary judgment on both of Harry's claims, which the district court granted.[1] Harry timely filed a notice of appeal.

## II.

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court.[2] We may affirm summary judgment for any reason supported by the record, and we are not bound by the grounds articulated by the district court.[3] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party."[5]

## III.

Harry advances two claims: national origin/race discrimination and retaliation.[6] While Harry's complaint does not expressly raise a race

---

[1] Harry also moved under FED. R. CIV. P. 56(d) to defer summary judgment, allowing more time for discovery. The district court denied the motion, and Harry does not appeal that ruling.

[2] *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005).

[3] *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1146 (5th Cir. 1993).

[4] FED. R. CIV. P. 56(a).

[5] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[6] Harry also insists on appeal that he has an independent claim for "wrongful dismissal" on which the district court improperly granted summary judgment without providing him an opportunity to be heard. Harry's complaint makes clear that the claim he

discrimination claim, the district court determined that alleged discrimination based on Harry's race and national origin were indistinguishable, and therefore that by pleading national origin discrimination, Harry also pleaded race discrimination. Neither party takes issue with this ruling, so we accept it.

## A. *National Origin/Race Discrimination*

Title VII makes it unlawful for an employer to discriminate against an employee based on the employee's race or national origin.[7] A Title VII plaintiff may prove discrimination either by direct or circumstantial evidence.[8] If the plaintiff's evidence is circumstantial, then the court applies the *McDonnell Douglas*[9] burden-shifting framework.[10]

### 1. *Direct Evidence*

We first consider whether Harry has produced any direct evidence of discrimination. The district court ruled that he did not. We agree.

Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.[11] In the Title VII context, direct evidence includes any statement or document that shows on its face that an improper criterion served as a basis for the adverse employment action.[12]

The only evidence that Harry points to as direct evidence of discrimination is the remarks made to him by Melvin, his supervisor. Harry's

---

styles "wrongful dismissal" is predicated on Title VII discrimination and retaliation, both of which Harry had a meaningful opportunity to argue before the district court ruled. Harry's argument that the district court erred by not analyzing his claims in terms of his preferred stylization is without merit.

[7] 42 U.S.C. § 2000e-2.

[8] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[10] *McCoy*, 492 F.3d at 556.

[11] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

[12] *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010).

affidavit explains:

> [S]he began calling me into her office or aside, frequently. Sherry Melvin's excuse was that she was trying to train me on my "communication skills." At these sessions, she called me arrogant, animated, aggressive and intimidating. She criticized my manner of speaking and facial expressions by commenting that I appeared animated when I spoke. When I asked her what she meant by "animated," she said "your eyes pop out," "your nose flares" and "your manner of speaking is very offensive to me." She told me on numerous occasions that I should "communicate with people more in writing because it is less offensive." . . . I told her that these traits were mannerisms that I had been raised with and she said "You have been in the United States for several years now, why can't you adapt?"

These remarks are not *direct* evidence of discrimination because an inference is required to link them to Harry's being fired for an improper reason. They were made in the context of counseling sessions, and allegedly occurred throughout Harry's employment, not immediately preceding his termination.[13] To consider them evidence of discrimination, one must infer that these comments are related to animus against Harry's national origin and formed a basis for his termination. Harry acknowledges that these comments must be "taken together" to "constitute characteristics unique to Harry as a Nigerian" and that "it is the totality of the commentary . . . that constitutes the harassment." While the comments may be circumstantial evidence of discrimination, we conclude that they do not serve as direct evidence of discrimination.

Therefore, the district court correctly found that Harry had not adduced direct evidence of discrimination, and applied the *McDonnell Douglas* standard

---

[13] *See Rubenstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (relatedness to adverse employment decision and proximity in time to adverse employment decision are relevant to whether workplace comments constitute direct evidence of discrimination).

for circumstantial evidence of discrimination.

## 2. *Circumstantial Evidence*

Under the *McDonnell Douglas* burden-shifting framework, a Title VII plaintiff must first establish a prima facie case of discrimination.[14] Once the plaintiff makes the applicable prima facie showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[15] If the employer meets this burden of production, then the plaintiff must show that the articulated reason is pretextual.[16]

### i. *Prima Facie Showing*

The parties here agree that Harry makes out a prima facie case of discrimination because it is undisputed that he (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action, and (4) was replaced by someone who is not a member of the protected class to which he belongs.[17]

### ii. *Legitimate Reason*

It is likewise undisputed that DHA has proffered legitimate, nondiscriminatory reasons for firing Harry. The record overflows with examples of Harry's poor work performance in the months leading up to his termination: "numerous complaints from employees that Mr. Harry supervised," "complaints from more than one of Mr. Harry's subordinates that Mr. Harry had made negative and demeaning comments to his subordinates," "an unacceptably high level of serious errors" in annual re-examination files

---

[14] *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 867 (5th Cir. 2016).

[15] *Id.*

[16] *Id.*

[17] *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

completed by one of the employees supervised by Harry,[18] failing to submit progress reports to Melvin, and insubordination.

In an effort to correct these problems, Melvin prepared an "individual development plan," or IDP, for Harry that required him to complete certain specified training, complete annual re-examinations by a certain date, submit completed spreadsheet reports to correct his employee's flawed file screenings, and ensure that quality-control corrections were completed by certain due dates, along with regular status reports. Harry failed to comply fully with the IDP by failing to submit the spreadsheet reports in a timely fashion and by failing to submit copies of the completed and signed forms for every file screened. Harry's discrimination claim thus turns on pretext.

### iii. Pretext

The district court ruled that Harry did not produce evidence to establish a genuine issue of material fact on pretext. We agree.

To establish pretext, Harry points to his own affidavit, in which he says that he complied with the IDP up until the date he was fired. It is true that a Title VII plaintiff can show pretext by showing that the explanation proffered by the employer is false.[19] But here, Harry is unable to substantiate his bald assertion.[20] In fact, his affidavit doubles back and instead makes excuses for why he did *not* comply with the IDP.

Acknowledging that he cannot provide evidence of his compliance with the IDP, Harry asserts that this is because DHA "refuses" to produce certain

---

[18] Harry was responsible for the errors although they were introduced by another employee because part of Harry's job as an Administrator was to ensure the accuracy of files.

[19] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[20] *See United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("[S]elf-serving allegations are not the type of 'significant probative evidence' required to defeat summary judgment.") (quoting *Munitrad Sys., Inc. v. Standard & Poor's Corp.*, 672 F.2d 436, 440 (5th Cir. 1982)).

e-mails he sent during his employment. Yet, in the year-long discovery period, Harry never served a proper discovery request on DHA for his e-mail communications. The record reveals that he tried multiple times, but his discovery requests were repeatedly found to be overbroad, abusive, and improper. Importantly, Harry does not appeal the district court's denial of his Rule 56(d) motion to defer summary judgment pending further discovery, or any other discovery-related ruling. He thus cannot complain about a lack of discovery preventing him from meeting his summary judgment burden.

More broadly, Harry ignores all of the other proffered legitimate grounds for his termination. Yet, "[a]n employee seeking to show pretext must rebut *each* discrete reason proffered by the employer."[21] Even if Harry's unsubstantiated and self-contradicted assertion in his affidavit created a genuine issue of fact whether he complied with the IDP, that would be only one out of many legitimate reasons proffered by DHA that Harry does not attempt to rebut. Noncompliance with the IDP was the last-in-time proffered legitimate reason for firing Harry—it occurred immediately prior to his termination—but is not the only legitimate reason proffered. The record makes clear that Harry's time at DHA was riddled with conflict between him and his co-workers, as well as several other work-related performance issues.

Harry also points out a linguistic discrepancy between an interrogatory response submitted by Melvin and Melvin's affidavit. It is true that an "unexplained inconsistency" in the employer's proffered justification is "evidence from which a jury could infer" pretext.[22] But the discrepancy that Harry cites is too slight to raise a genuine issue. In an interrogatory response,

---

[21] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (emphasis added); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citing *Laxton*, 333 F.3d at 578).

[22] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 415 (5th Cir. 2007).

Melvin stated that "Harry still had not submitted complete, filled out spreadsheet reports." In her affidavit, Melvin rephrased: "Harry failed to submit any of the spreadsheet reports in a timely fashion." The district court ruled that the explanations, "while not identical, are not materially inconsistent." We agree. A reasonable jury could not infer based on that discrepancy that Harry's failure to comply fully with the IDP, and every other proffered justification for firing Harry, are all pretextual.

Therefore, Harry has not met his summary judgment burden to establish a genuine issue of material fact that DHA's proffered reasons for firing him were pretextual.

*B. Retaliation*

"To survive summary judgment in a Title VII retaliation case, the plaintiff must make a prima facie showing: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."[23] As with a discrimination claim, once such a prima facie showing is made, the burden shifts to the defendant to articulate a nondiscriminatory reason, then back to the plaintiff to demonstrate pretext.[24]

Even assuming that Harry can make out a prima facie case of retaliation, all of DHA's stated justifications for terminating Harry, described previously, apply equally to his retaliation claim. Therefore, the fact that Harry cannot establish a genuine issue of material fact that such justifications are pretext similarly defeats his retaliation claim. Accordingly, the district court's grant of summary judgment on Harry's retaliation claim was proper, and we affirm it.

---

[23] *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)).

[24] *McCoy*, 492 F.3d at 556.

No. 16-10095

## IV.

We address as a final note Harry's argument on appeal that the district court erred by declining to consider his hostile work environment claim. Harry's original, state-court petition asserted a cause of action for hostile work environment, but after DHA removed to federal court, Harry amended his complaint to eliminate it.[25] The parties conducted discovery for nearly a year pursuant to Harry's complaint so amended. When DHA moved for summary judgment on Harry's discrimination and retaliation claims—the claims actually pleaded in his complaint—Harry sought to re-introduce his abandoned hostile work environment claim by arguing that DHA failed to move for summary judgment on it, and therefore "conceded" it. In essence, Harry raised a "new" hostile work environment claim in his summary judgment opposition.

Under certain compelling circumstances, we have required district courts to construe a new claim raised in opposition to summary judgment as a motion to amend.[26] No such circumstances are present here. Therefore, the district court was free to determine that Harry's new claim was not properly before it.[27] We find no abuse of discretion in its decision to do so, especially considering that discovery had already ended and that there was no apparent excuse for re-raising the abandoned claim other than as a maneuver to avoid summary judgment.

---

[25] Harry's complaint as amended contains a section enumerating specific causes of action, but does not include hostile work environment. Nor does it recite the elements of or allege facts supporting each element of hostile work environment.

[26] *See Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010) (unpublished) (*pro se* plaintiff); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972) (serious errors by plaintiffs' counsel).

[27] *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

No. 16-10095

**V.**

For the reasons stated above, we AFFIRM.