# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2020

Lyle W. Cayce
Clerk

No. 19-60880

Michael Yarbrough, Jr.; Ann Yarbrough; Alizelyia Yarbrough; Michael Yarbrough, III, Minors, *by and through their natural guardians*, Michael Yarbrough, Jr. and Ann Yarbrough; James Yarbrough, Minors, *by and through their natural guardians*, Michael Yarbrough, Jr. and Ann Yarbrough,

*Plaintiffs—Appellants*,

*versus*

Hunt Southern Group, L.L.C., *formerly known as* Forest City Southern Group, L.L.C.; Forest City Residential Management, L.L.C.; Hunt MH Property Management, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:18-CV-51

Before Barksdale, Elrod, and Ho, *Circuit Judges*.

No. 19-60880

Per Curiam:*

At issue is the summary judgment granted appellees.  AFFIRMED.

I.

Keesler Air Force Base (Keesler) is located along the Gulf Coast in Biloxi, Mississippi.  In 2011, the United States Air Force entered into a land lease with Forest City Southern Group, LLC (Forest City Southern), to transfer ownership and "privatize" over 1,000 residential units at Keesler.  Between 2011–16, the units were managed by Forest City Residential Management, LLC (FCRM).  In 2016, Forest City Southern changed its name to Hunt Southern Group, LLC, and management of the properties transferred to Hunt MH Property Management, LLC (collectively, Hunt Southern).  Neither FCRM nor Hunt Southern designed or constructed the units.

In 2015, in response to moisture and mold issues in various units, Hunt Southern (then, Forest City Southern) initiated its moisture remediation project (MRP) throughout all Keesler units.  By early 2018, the MRP had addressed every unit, with the extent of work depending on the unit's particular problem.

Technical Sergeant Ann Yarbrough moved into Keesler housing in 2011.  She signed a lease with Hunt Southern containing, *inter alia*, a clause allowing the landlord to relocate the tenant if the unit was rendered uninhabitable.  Between 2011–17, the Yarbroughs made at least seven mold-related maintenance requests.  In late 2016, the unit was repaired according

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60880

to the MRP, with extensive remediation efforts targeting moisture accumulation and mold growth.

In early 2017, the Yarbroughs engaged Mold Test, USA, to inspect their unit. The test revealed the presence of, *inter alia*, Aspergillus and Penicillium—molds that can cause diseases in humans. The test, however, did not determine the species of Aspergillus or Penicillium (only 20 of roughly 175 species of Aspergillus are harmful), and moisture levels in the unit were normal.

The Yarbroughs filed this action against FCRM and Hunt Southern in December 2017, presenting 11 claims, including: constructive eviction, breach of contract, and fraudulent concealment. The Yarbroughs declined Hunt Southern's offer to relocate them to a new unit in August 2018, and did not vacate their unit until February 2019.

FCRM and Hunt Southern moved for summary judgment following discovery. The court granted their motion and denied the Yarbroughs' Federal Rule of Civil Procedure 59(e) motion.

II.

The Yarbroughs contest the summary judgment on only five of their 11 claims in district court: breach of contract; breach of agreement to repair; breach of implied warranty of habitability; fraudulent concealment; and constructive eviction under the Servicemember Civil Relief Act (SCRA). They also present three additional issues regarding: two discovery orders by a magistrate judge; intentional infliction of emotional distress; and third-party-beneficiary breach of contract. We turn first to these three issues, each of which lacks merit.

No. 19-60880

A.

1.

We lack jurisdiction to review either of the two challenged discovery orders by the magistrate judge.  First, the Yarbroughs did not designate these orders in their notice of appeal.  They are, therefore, outside appellate jurisdiction.  Fed. R. App. P. 3(c)(1)(B); *see Smith v. Barry*, 502 U.S. 244, 248 (1992) ("Although courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal.").  Second, even if they had been designated, the Yarbroughs never appealed the orders to the district court as required by Federal Rule of Civil Procedure 72(a).

2.

As the district court correctly noted in granting summary judgment, the Yarbroughs' intentional-infliction-of-emotional-distress claim was raised for the first time in the Yarbroughs' response to the Rule 56(a) summary-judgment motion.  Summary judgment may not be defeated "on the basis of a theory found nowhere in [plaintiff's] complaint, at least without also moving to amend or absent trial by consent".  *Johnson v. Thibodaux City*, 887 F.3d 726, 736 (5th Cir. 2018).

3.

In a similar vein, the Yarbroughs' third-party-beneficiary claim was not presented on appeal until in their reply brief.  As discussed in appellees' motion to strike a portion of that brief (the motion is DENIED as moot), this issue has not been properly preserved.  *See CenturyTel of Chatham, LLC v. Sprint Commc'ns Co., L.P.*, 861 F.3d 566, 573 (5th Cir. 2017) (applying the general rule that issues raised for the first time in a reply brief will not be considered on appeal).

## B.

Essentially for the reasons stated by the district court in its well-reasoned opinion, summary judgment was proper. Along that line, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). A summary judgment is reviewed *de novo*, applying the same legal standard as the district court. *E.g.*, *Heggemeier v. Caldwell Cty.*, 826 F.3d 861, 866 (5th Cir. 2016).

### 1.

The breach-of-contract and breach-of-agreement-to-repair claims fail for the same reason: there are no identified provisions within the lease that FCRM or Hunt Southern violated. Notwithstanding the Yarbroughs' insistence that the terms of the lease weren't at issue in the summary-judgment motion (they were), the Yarbroughs never substantiated either claim with relevant provisions within the lease.

### 2.

The Yarbroughs also failed to produce adequate evidence of specific causation in support of their implied-warranty-of-habitability claim. And, as the district court correctly observed, they provided no evidence supporting specific causation, let alone expert testimony for the claim. As noted, the Yarbroughs' expert was unable to determine the specific mold(s) to which the Yarbroughs were exposed; and the only medical-expert evidence offered in the case was by a Rule 35 examiner who determined "to a reasonable degree of medical certainty" that the Yarbroughs' symptoms were not caused by exposure to mold in their unit.

3.

Similarly, the Yarbroughs did not present evidence in support of their claims for fraudulent-concealment and constructive-eviction-under-the-SCRA. No misrepresentations were pleaded, and there was no evidence showing the Yarbroughs were manipulated or fraudulently induced into refusing the offer to relocate in 2018. Rather, the Yarbroughs chose to remain in their unit after being offered to move at no cost, belying their claim of constructive eviction. And, because there was no constructive eviction, there can be no claim under the SCRA. *See* 50 U.S.C. § 3951(a)(1)(A) ("Except by court order, a landlord (or another person with paramount title) may not . . . *evict* a servicemember . . . during a period of military service of the servicemember, from premises . . . that are occupied or intended to be occupied primarily as a residence") (emphasis added).

III.

For the foregoing reasons, the judgment is AFFIRMED.